## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

| | |
|---|---|
| MARIO HERNANDEZ ) | |
| ) | |
| Plaintiff ) | CASE NO.:  1:20-CV-22721-XXXX |
| ) | |
| v. ) | |
| ) | |
| EQUAL EMPLOYMENT OPPORTUNITY ) | COMPLAINT |
| COMMISSION and JANET DHILLON, CHAIR ) | WITH JURY TRIAL DEMAND |
| OF THE EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION ) | |
| | |
| Defendant(s) | |

_____/

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful discrimination in federal employment practices on the basis of sex and retaliation, and to provide appropriate relief to Plaintiff Mario Hernandez and a class of similarly situated males who were adversely affected by such practices.

As alleged with greater particularity below in paragraphs, Plaintiff MARIO HERNANDEZ ("**PLAINTIFF**" and/or "**Plaintiff HERNANDEZ**") and similarly situated male employees alleges that he was subjected to ongoing harassment (sexual and non-sexual) and a hostile work environment by the Equal Employment Opportunity Commission ("**Defendant**" or "**Defendant EEOC**") and Chair of the Equal Employment Opportunity Commission Janet Dhillon ("**Defendant DHILLON**") (collectively, "**DEFENDANTS**") when Defendants were aware of and permitted Enforcement Supervisor Katherine Gonzalez ("Supervisor Gonzalez") to discriminate against Plaintiff, and other similarly situation male employees, on the bases of sex (male), when,

from 2012 to the present, which created a hostile work environment. Additionally, Defendants retaliated against Plaintiff HERNANDEZ for opposing such practices by, in part, refusing to investigate the claims, withholding promotions, changing his schedule, and frustrating his workload and taking actions that threatened his employment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3), and Section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000e-16(c), 2000e-5(f)(1) and (3) et seq. ("Title VII") and section 102 of the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. Section 791, the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.; and Title 29, Code of Federal Regulations, Part 1614, et seq. and Ch. 760, Florida Statute of the Florida Civil Rights Act.

2.      Venue is proper in the United State District Court for the Southern District of Florida, Miami Division, pursuant to 42 U.S.C., 2000e-5(f)(3).  In addition, venue is proper herein as the primary actions complained of either occurred within or were directed within the geographical boundaries of the Miami, Florida (Southern District of Florida); and pursuant to 28 U.S.C. Section 1391(e).

## PARTIES

3.      Plaintiff HERNANDEZ is a Hispanic male currently domiciled in Miami, Florida, and who for all times relevant herein has been employed on a full-time basis as an employee of the United States Equal Employment Opportunity Commission ("EEOC").  At those times relevant

to the subject of this lawsuit, Plaintiff HERNANDEZ was assigned for his professional work to the Miami District Office, a field office within the Miami District of the EEOC located at 100 SE 2nd Street, Suite 1500, Miami, FL 33131 ("MIDO").

4.     At all relevant times, Defendant EEOC has continuously been a Federal Agency doing business in the State of Florida and within the City of Miami and has continuously had at least 15 employees.  At those times relevant to the subject of this lawsuit, Plaintiff HERNANDEZ was employed by and assigned for his professional work MIDO.

5.     Defendant DHILLON is the Chair of the EEOC and, as such, is the Defendant only in her official capacity as the Chair of the Defendant EEOC.  Defendant DHILLON is the senior Executive Branch federal official responsible for the actions of the United States Equal Employment Opportunity Commission, which is the principal subject of the allegations made herein, and which is located at 131 M St. NE, 6th Floor, Washington, DC 20507.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES/CONDITIONS PRECEDENT**

6.     From approximately 2012 to the present, Plaintiff HERNANDEZ suffered from continuing violations and discrimination by Defendants as outlined in more detail herein.

7.     At all times material hereto, Plaintiff HERNANDEZ was misled by Defendants into allowing any applicable statutory periods to lapse.

8.     Plaintiff HERNANDEZ, and other similarly situated individuals, advised the EEOC of complaints of unlawful sexual harassment, discrimination based on sex and retaliation since approximately 2012.

9.     Plaintiff HERNANDEZ, and other similarly situated individuals, timely initiated the involvement of the Equal Employment Opportunity (EEO) Office.

10.     Plaintiff HERNANDEZ was issued the Notice of Right to File a Formal Complaint.

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 l Coral Gables, FL 33134 l T: (305) 340-7542 l F: (305) 418-7438 l W: www.azoysocorro.com

Plaintiff HERNANDEZ timely filed a formal EEO complaint.

11.     More than thirty (30) days prior to the institution of this lawsuit, Plaintiff HERNANDEZ filed a charge with the Commission alleging violations of Title VII by Defendant EEOC.

12.     Plaintiff submitted charges of discrimination to Defendant EEOC within 180 days of the discrimination against them.

13.     Prior to the institution of this lawsuit, Defendant EEOC and Defendant DHILLON issued letters of determination on April 6, 2020 finding reasonable cause to believe that Plaintiff HERNANDEZ was subjected to harassment and retaliation by Defendants.

14.     Prior to the institution of this lawsuit, Defendant EEOC, Defendant DHILLON and/or representatives failed/refused to attempt to eliminate the unlawful employment practices alleged below and to effect Defendant's voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b).

15.     Thus, all conditions precedent to bringing this action have been performed or occurred.

## STATEMENT OF FACTS

### A.  Harassment

16.     In April 2009, the Agency hired Plaintiff HERNANDEZ as a GS-12 Investigator at the MIDO.

17.     Plaintiff, and other similarly situated individuals, including but not limited to Robert Tom and Juan Nieves, was subjected to ongoing harassment (sexual and non-sexual) and a hostile work environment by Supervisor Katherine Gonzalez ("Supervisor GONZALEZ"), a

former MIDO Enforcement Supervisor and Defendants, on the bases of sex (male); national origin (Hispanic) and disability (post-traumatic stress disorder (PTSD) from 2012 to the present.

18.     Plaintiff and other similarly situated individuals, including but not limited to Robert Tom and Juan Nieves, was subjected to unwanted, unsolicited sexual advances and Supervisor GONZALEZ.  Indeed, Supervisor GONZALEZ would engage in "grooming," in which she would use her position as a Supervisor and Plaintiff HERNANDEZ's disability to force him and other similarly situated individuals, including but not limited to Robert Tom and Juan Nieves, into a non-consensual sexual relationship.

19.     Specifically, Supervisor GONZALEZ's offensive conduct was severe and pervasive enough to create an objectively hostile or abusive work environment for Plaintiff HERNANDEZ at MIDO.  Specifically, the offensive conduct included but was not limited to the following:

a.  In September 2012, when Supervisor GONZALEZ became Plaintiff's manager, she began to express romantic interest in him.

b.  Between 2012 and 2013, Supervisor GONZALEZ began to engage in flirtatious behavior, using her position as his supervisor to pressure him to attend happy hours and long lunches (lasting two to three hours each).

c.   In late 2013, Supervisor GONZALEZ scheduled a number of on-site visits with Plaintiff in Key Largo and Key West, Florida. During the trip Plaintiff and Supervisor GONZALEZ began a nonconsensual sexual relationship.

d.  Supervisor GONZALEZ continued to engage in unwanted conduct towards Plaintiff HERNANDEZ following the Key West trip.

e.  Supervisor GONZALEZ began going into Plaintiff's office and would engage in sexual acts. Initially, Plaintiff resisted Supervisor GONZALEZ attempts at sexual

contact at the office. Plaintiff was afraid of losing his job and further jeopardizing his marriage.

f.  Supervisor GONZALEZ would touch Plaintiff, and when he would remove her hand, Supervisor GONZALEZ would quickly place her hand on another part of his body or unzip his pants.

g.  Supervisor GONZALEZ would touch Plaintiff HERNANDEZ's leg or put her hands on his shoulders during lunches and happy hours.

h.  Supervisor GONZALEZ would kiss Plaintiff HERNANDEZ.

i.  Supervisor GONZALEZ would send Plaintiff HERNANDEZ repeated test messages and "manic displays of affection."

j.  Supervisor GONZALEZ would visit Plaintiff's office for lengthy periods of time if he would not go out with her. When Supervisor GONZALEZ's frequent visits to Plaintiff's office for sexual contact drew the attention of other managers, Supervisor GONZALEZ began calling Plaintiff into her office. As such, Plaintiff felt forced and trapped by Supervisor GONZALEZ.

k.  Supervisor GONZALEZ would appear at events Plaintiff was attending, including his children's school. Furthermore, Supervisor GONZALEZ demanded all of Plaintiff HERNANDEZ's attention and would punish him if he spoke to other women at work.

l.  Supervisor GONZALEZ entered Plaintiff HERNANDEZ's office at MIDO, locked the door and performed oral sex on him.

m.  Supervisor GONZALEZ would constantly touch Plaintiff HERNANDEZ all over his body and unzip his pants.

n.  On multiple occasions, Supervisor GONZALEZ would appear at events Plaintiff HERNANDEZ was attending or at his children's school.

o.  Supervisor GONZALEZ would visit his office at MIDO for lengthy periods of time and refuse to leave

p.  On one occasion, Supervisor GONZALEZ appeared at the hospital where Plaintiff HERNANDEZ's daughter was being treated because he refused to return her multiple phone calls.

q.  Supervisor GONZALEZ sent nude photographs to Plaintiff HERNANDEZ's phone.

20.  Plaintiff HERNANDEZ subjectively perceived Supervisor GONZALEZ's offensive conduct as abusive.

21.  As a result thereof, Plaintiff HERNANDEZ broke off sexual relations completely when Supervisor GONZALEZ came to the hospital where his daughter was being treated because he was not returning her calls.

22.  Plaintiff HERNANDEZ communicated his opposition to Supervisor GONZALEZ's unwanted advances.  Specifically, he:

a.  Rejected Supervisor GONZALEZ's flirting;

b.  Rejected Supervisor GONZALEZ's touching.

c.  Rejected Supervisor GONZALEZ's invitations to nightclubs.

d.  Confirmed that they, "[W]ere not in a relationship;"

e.  Blocked Supervisor GONZALEZ from his social media accounts;

f.  Stopped carpooling with Supervisor GONZALEZ.

g.  Declined her invitations to lunch, and.

h.  Continuously complained to various levels of management to no avail.

23.  Eventually, Supervisor GONZALEZ began bothering Plaintiff HERNANDEZ's less often, after she sent a nude photo of herself to Plaintiff's phone, which his wife intercepted.

24.  At the time, Plaintiff HERNANDEZ's who has been diagnosed Post Traumatic

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 I Coral Gables, FL 33134 I T: (305) 340-7542 I F: (305) 418-7438 I W: www.azoysocorro.com

Stress Disorder (PTSD) was "vulnerable" and utilized poor coping mechanisms (e.g., excessive drinking) when Supervisor GONZALEZ was harassing him. Supervisor GONZALEZ's harassment exacerbated Plaintiff HERNANDEZ's pre-existing condition of PTSD.

25.     Supervisor GONZALEZ was aware of Plaintiff HERNANDEZ's PTSD and used her knowledge of the symptomology of his condition to trigger him. Supervisor GONZALEZ would play "head games" with Plaintiff HERNANDEZ, attempting to manipulate him to make him believe "it was all his fault."

26.     Plaintiff HERNANDEZ's accepted the fact that if he did not have sex with Supervisor GONZALEZ, she would make his life difficult and he would continue to use "poor coping mechanisms."

27.     Plaintiff HERNANDEZ was negatively affected as result of rejecting Supervisor GONZALEZ's advances and unwanted conduct.

## B.  Retaliation

28.     Plaintiff HERNANDEZ did not solicit or incite the conduct and, instead, informed Supervisor GONZALEZ that said conduct was unwelcomed, undesirable and offensive.

29.     When Plaintiff HERNANDEZ rejected Supervisor GONZALEZ's unwanted and offensive conduct, Supervisor GONZALEZ retaliated against him.  Specifically:

a.  When Plaintiff Hernandez rejected Supervisor GONZALEZ, she would strictly enforce the 30-minute lunch break rule against him, only.

b.  When Plaintiff Hernandez rejected Supervisor GONZALEZ, she would force Plaintiff HERNANDEZ to take leave even if he returned five minutes late.

c.  When Plaintiff Hernandez rejected Supervisor GONZALEZ, she would overly scrutinize Plaintiff HERNANDEZ's work and would make comments such as, "I

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 I Coral Gables, FL 33134 I T: (305) 340-7542 I F: (305) 418-7438 I W: www.azoysocorro.com

have to look at your work more closely since you took a little too long at lunch."

    d.   Supervisor GONZALEZ would punish Plaintiff HERNANDEZ if he spoke to other female employees at work.

    e.   After being transferred to Enforcement Supervisor Peters ("Ms. Peters") team, Supervisor GONZALEZ began to provide Ms. Peters with information about him such as arrival time.

    f.   Supervisor GONZALEZ, on multiple occasions, attempted to speak to Plaintiff HERNANDEZ after they were instructed to stay away from each other by Director Farrell

    g.   When Plaintiff HERNANDEZ confirmed that he was going to tell Director Farrell about her communication attempts, Supervisor GONZALEZ threatened Plaintiff HERNANDEZ by claiming that if he did not go along with her, it would affect his family, that he would get in trouble and that he would be terminated.

    h.   Supervisor GONZALEZ interfered with Plaintiff HERNANDEZ's application for a Mediator position and used her influence with MIDO management to prevent him from being selected for the position because she did not want him to be selected for the position.

    i.   Supervisor GONZALEZ would access Plaintiff HERNANDEZ computer and delete files and applications to leave her division.

    j.   Supervisor GONZALEZ confronted Plaintiff HERNANDEZ after the photograph incident and questioned whether he was "still on her side" and confirmed that if he did not go along with her Plaintiff HERNANDEZ would be terminated.

    30.   Plaintiff HERNANDEZ interpreted Supervisor GONZALEZ's behavior as punishment for refusing her unwelcomed conduct.

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 l Coral Gables, FL 33134 l T: (305) 340-7542 l F: (305) 418-7438 l W: www.azoysocorro.com

31.     Plaintiff HERNANDEZ also informed MIDO Director Michael Farrell of Supervisor GONZALEZ's unwelcomed conduct and that said actions triggered his PTSD.

32.     In addition, Plaintiff HERNANDEZ spoke to Maria De Paz, the State and Local Coordinator for the MIDO and former Deputy Director Ozzie Black about the harassment.

33.     Plaintiff HERNANDEZ also told Enforcement Manager Nitza Wright, and Enforcement Supervisors Fernella Peters and Rosemary Caddle about the harassment, but he did not disclose the sexual relationship. Enforcement Supervisor Peters did not believe Plaintiff HERNANDEZ and told him the relationship appeared to be consensual.

34.     In 2016 or 2017, Director Farrell told Plaintiff he would "take care of" the issue with Supervisor GONZALEZ. Director Farrell later told Plaintiff to stay away from Supervisor GONZALEZ and report if Supervisor GONZALEZ contacted him. However, Supervisor GONZALEZ continued to contact Plaintiff despite his reports to Director Farrell.

35.     Director Farrell told Plaintiff that the situation with Supervisor GONZALEZ preceded him and Agency Headquarters was aware of the matter.

36.     During this time, management protected Supervisor GONZALEZ and allowed her to continue to use her power and influence in the MIDO to harass, coerce, and abuse Plaintiff. In fact, Supervisor GONZALEZ would brag to Plaintiff that she was protected throughout the Agency. Nevertheless, MIDO management knowingly allowed Supervisor GONZALEZ's conduct to continue and did nothing to remedy or stop the situation.

37.     When Plaintiff complained about Supervisor GONZALEZ to Director Farrell and other MIDO managers, Supervisor GONZALEZ would later repeat information from these conversations and mock Plaintiff for complaining.  Supervisor GONZALEZ told Plaintiff that MIDO management did not believe him and that he was only hurting his credibility and bolstering

hers by complaining. Additionally, Supervisor GONZALEZ told Plaintiff that Director Farrell and Agency Headquarters believed that his allegations were not credible.

38.     Plaintiff was informed by Supervisor Wright, Supervisor Caddle, and Supervisor Ricardo that Director Farrell believed that he was the aggressor and that Supervisor GONZALEZ was the victim.

39.     From 2012 to the present, Defendants were aware of Supervisor GONZALEZ's on going sexual harassment of Plaintiff HERNANDEZ, and other male employees, as well as MIDO management's retaliatory conduct related to same, but took no action to stop it or prevent it from occurring.

40.     Plaintiff HERNANDEZ and similarly situated employees objected to Supervisor GONZALEZ's attention, comments and conduct and repeatedly told her to "stop" or used similar words to same effect.

41.     From approximately 2012 and as a group and individually, Plaintiff HERNANDEZ and similarly situated male employees each informed Supervisor Wright, Supervisor Caddle, and Supervisor Ricardo, Director Farrell and the EEO about Supervisor GONZALEZ's conduct, but nothing was done to stop her behavior or to protect Plaintiff HERNANDEZ and other similar situation male employees from her.

42.     Although Supervisor Wright, Supervisor Caddle, and Supervisor Ricardo, Director Farrell and the EEO informed Plaintiff HERNANDEZ and others that they would "handle it," Supervisor GONZALEZ continued to patronize the restaurant on a regular basis and continued to subject the female servers to sexual harassment.

43.     Notwithstanding repeated and continuing complaints about the sexually harassing comments and conduct of Supervisor GONZALEZ, Supervisor GONZALEZ continued to

sexually harass Plaintiff HERNANDEZ and other male employees.

44.     Soon after his complaint in approximately 2012, Defendants began retaliating against Plaintiff HERNANDEZ because he repeatedly objected to, reported and opposed Supervisor GONZALEZ's sexually inappropriate comments and conduct.

45.     Upon learning that Supervisor GONZALEZ engaged in unwarranted and harassing conduct with Plaintiff HERNANDEZ, one of her subordinates, Defendants began to take negative action against him.  Specifically:

    a.  Plaintiff HERNANDEZ was reassigned to Supervisor Peters only three (3) months after Supervisor GONZALEZ's unwarranted advances.

    b.  Plaintiff HERNANDEZ was provided less case load;

    c.  Plaintiff HERNANDEZ's case load was manipulated by Defendant to form the pretext of poor performance.

    d.  Plaintiff HERNANDEZ was passed up for promotions, step increases and bonuses;

    e.  Plaintiff HERNANDEZ was Passed up from mediator positions;

    f.  Defendants purposely refused to provide Plaintiff HERNANDEZ with any performance appraisals for years, as retaliation and to stop/deter complaints against management.

    g.  Plaintiff HERNANDEZ was monitored and spied on by Supervisor GONZALEZ who would inform Supervisor Peters of Plaintiff HERNANDEZ's arrival, break and lunch times who would then threaten Plaintiff HERNANDEZ with discipline.

    h.  Supervisor GONZALEZ and Supervisor Wright averred and colluded to "take action" against Plaintiff HERNANDEZ;

    i.  After being assigned to Supervisor Caddle team in 2017, she removed Plaintiff

HERNANDEZ from his flex schedule and telework in 2018 and subsequently placed him on leave restriction in May 2018;

j.   Supervisor Caddle and Director Farrell issued multiple disciplinary warnings and placed Plaintiff HERNANDEZ on performance improvement plans (PIPS) due to his alleged unsatisfactory performance without any record evidence documenting performance deficiencies.

k.   Without investigating Supervisor GONZALEZ's actions as possible harassment, Defendants acted on the belief that there was a consensual relationship in which Supervisor GONZALEZ was the victim , and reassigned Plaintiff HERNANDEZ to a supervisor who even some managers believed was difficult to work with;

l.   Defendants ignored Plaintiff HERNANDEZ's multiple requests to assist in stopping the unwanted sexual advances by Supervisor GONZALEZ;

m.   Defendants, despite being aware of Plaintiff's resistance to his supervisor's sexual advances and unwarranted conduct since approximately 2012, failed and/or refused to take immediate and reasonable actions to protect him from Supervisor GONZALEZ's constant and multiple attempts to rebuff;

n.   Defendants implemented remedial measures in an attempt to correct the effects of harassment that directly and adversely affected Plaintiff HERNANDEZ such as his reassignment to Supervisor Peters in January 2014, within three months of Supervisor GONZALEZ's advances;

o.   Defendants disciplined, belittled and ostracized Plaintiff HERNANDEZ

p.   Defendants denied Plaintiff HERNANDEZ promotions and hindered his ability to advance his career within and outside the EEOC.

AZOY SOCORRO, LLP

2020 Ponce de Leon Boulevard, Suite 1008 | Coral Gables, FL 33134 | T: (305) 340-7542 | F: (305) 418-7438 | W: www.azoysocorro.com

q.  Plaintiff HERNANDEZ was continuously shamed, questioned and doubted by MIDO management regarding his claim that Supervisor GONZALEZ subjected him to sexual harassment.

r.  Defendants were aware that Supervisor GONZALEZ was using her position of power to coerce and abused Plaintiff HERNANDEZ since 2014 but did nothing to stop or remedy the situation.

s.  Defendants transferred Plaintiff HERNANEZ to Ms. Peters' unit with the intention of placing him on a Performance Improvement Plan and termination his employment or forcing him to resign.

t.  Ms. Peters MIDO management would refuse to approve Plaintiff HERNANDEZ's cases

u.  Ms. Peters and MIDO management would require Plaintiff HERNANEZ to redraft documents, then eventually approve the original versions of the documents

v.  MIDO management would physically remove cases from Plaintiff HERNANDEZ's inventory, then place the cases back in Plaintiff HERNANDEZ's inventory, all with the purpose of negatively affecting his statistics.

w.  Ms. Peters and MIDO management would backdate items in Plaintiff HERNANDEZ's inventory and make him responsible for "aged" cases.

x.  Ms. Peters and MIDO management would approve cases if Plaintiff HERNANEZ had another employee submit them or if he waited until the end of the year to submit them.

y.  Ms. Peters and MIDO management would return his cases for minor issues in an attempt to reduce his productivity.

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 | Coral Gables, FL 33134 | T: (305) 340-7542 | F: (305) 418-7438 | W: www.azoysocorro.com

z.   On or about 2017, Supervisor Caddle and MIDO management would manipulate his inventory and, as a result, would often threaten Plaintiff HERNANDEZ that he would be placed on a PIP.

aa.  Supervisor Caddle and MIDO management placed Plaintiff HERNANDEZ on leave restriction in 2018.

bb.  Supervisor Caddle and MIDO management removed Plaintiff HERNANDEZ from his flexible schedule and completely removed him from teleworking.

cc.  As a direct result of the discrimination and harassment, Supervisor Caddle and MIDO management forced Plaintiff HERNANDEZ to use annual leave in lieu of sick leave in 2018.

46.   The retaliation affected the terms and conditions of Plaintiff HERNANDEZ's employment as outlined above.

47.   Prior to his complaint of Supervisor GONZALEZ, Plaintiff HERNANDEZ was a good investigator with no documented, PIPs or record evidence that his performance was poor.

48.   After his complaint of Supervisor GONZALEZ, Defendants changed Plaintiff HERNANDEZ's schedule in retaliation for his repeated complaints about and objections to Supervisor GONZALEZ's sexual harassment.

49.   After his complaint of Supervisor GONZALEZ and in addition to the forgoing, Defendants altered Plaintiff HERNANDEZ's workload so that he was precluded from coding cases in the IMS system to remove aged inventory from his workload.  The result was that a massive aged inventory of cases were left on Plaintiff's system until MIDO management removed them. Other employees in Plaintiff HERNANDEZ's same position did not have this restriction and were able to remove the cases on their own and without need of MIDO management to

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 | Coral Gables, FL 33134 | T: (305) 340-7542 | F: (305) 418-7438 | W: www.azoysocorro.com

intervene.

50.     As a result of the retaliation, Plaintiff HERNANDEZ's demeanor changed as he became more withdrawn, less energetic, experienced difficulty concentrating.  In addition, Plaintiff HERNANDEZ suffered from loss of credibility and a damaged professional reputation. Plaintiff HERNANDEZ           's work was overly scrutinized to the point that he second guessed his every move.

51.     As a result of the retaliation, Plaintiff HERNANDEZ earned less money.

52.     In early 2017, Defendant's management became aware of Plaintiff HERNANDEZ's investigation with the EEO and intention to take legal action due to Defendant's failure to protect him from Supervisor GONZALEZ.

53.     Defendants attempted to constructively terminate Plaintiff HERNANDEZ between 2017 and 2018 in retaliation for his repeated complaints about and objections to the sexual harassment to which he was subjected and his intention to take legal action for Defendant's failure to redress his complaints.

54.     Any remedial action taken by Defendants related to Plaintiff HERNANDEZ's, as well as other similar situated male employees, claims was never prompt or reasonably calculated to end the harassment.

55.     Given the duration and nature of the conduct, it is apparent that Plaintiff HERNANDEZ's work environment was objectively hostile and that Plaintiff HERNANDEZ subjectively believed the environment was hostile and abusive.

56.     Defendants' actions from approximately 2012 to the present, would clearly deter a reasonable person from opposing discriminatory harassment.

57.     As of the filing of this pleading, Supervisor GONZALEZ remains employed by

Defendants.

58.    As a result of the foregoing, Plaintiff HERNANDEZ and similarly situated male employees suffered damages.

**CLAIMS FOR RELIEF**
**(Harassment based on Sex)**
**(Title VII of the Civil Rights Act of 1964,**
**U.S.C. §§ 2000(e), et. Seq.)**

59.    Plaintiff HERNANDEZ incorporates by reference the allegations in all preceding paragraphs.

60.    Plaintiff HERNANDEZ, a member of a protected class (male), brings this claim on his own behalf and on behalf of all similarly situated male employees of MIDO.

61.    On a continuing basis since at least 2012, Defendants were aware that Supervisor GONZALEZ, his direct supervisor, subjected Plaintiff HERNANDEZ to unwelcome conduct related to his sex, male, including sexual advances, requests for favors, or other verbal or physical conduct of a sexual nature location in violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a).  Specifically, Defendants were aware that Supervisor GONZALEZ subjected Plaintiff HERNANDZ to unwelcome conduct related to his sex as outlined in paragraphs 3 to 58, above.

62.    The harassment and unlawful employment practices suffered by Plaintiff HERNANDEZ were based on his sex, male.

63.    The effect of the harassment and unlawful employment practices complained of in paragraphs 16 through 27 above was sufficiently severe and pervasive and had the purpose and effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile or offensive work environment.

64.    The effect of the harassment and unlawful employment practices complained of in paragraphs 16 through 27 above has been to deprive Plaintiff and similarly situated male

employees who worked at United States Equal Employment Opportunity Commission Miami District Office since at least 2012 of equal employment opportunities and otherwise adversely impact their status as employees because of their sex, male.

65.     The unlawful employment practices complained of in 16 through 27 above were intentional and caused Plaintiff HERNANDEZ and similarly situated males who worked at Defendant's Miami District Office to suffer emotional distress, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or personal stress and mental and physical pain and suffering

66.     The unlawful employment practices complained of in 16 through 27 above were intentional and caused Plaintiff HERNANDEZ and similarly situated males who worked at Defendant's Miami District Office to lose earnings, compensation and income including, but not limited to, back-pay.

67.     The unlawful employment practices complained of in 16 through 27 above were engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff HERNANDEZ and similarly situated males employed by Defendants.

68.     The unlawful employment practices complained of in 16 through 27  above form the basis for imputing liability on Defendants as Defendants were aware of the harassment and unlawful employment practices since 2012 and failed to take any prompt and/or reasonable action to end the harassment.

**CLAIMS FOR RELIEF**
**(Retaliation/Retaliatory Harassment)**
**(Title VII of the Civil Rights Act of 1964,**
**U.S.C. §§ 2000(e), et. Seq.)**

69.     Plaintiff HERNANDEZ incorporates by reference the allegations in all preceding paragraphs.

70.    Plaintiff HERNANDEZ, at all times material hereto, undertook protected conduct when he complained to Supervisor GONZALEZ and Defendants about the unwanted conduct as outlined in paragraphs 3 to 58, above.

71.    As a result thereof, Defendants took a material adverse action against Plaintiff HERNANDEZ.  Specifically, Defendants retaliated against Plaintiff HERNANDEZ outlined in paragraphs 28 to 58, above.

72.    Acausal nexus exists between Plaintiff HERNANDEZ's undertaking of the protected conducted complained of in paragraphs 28 to 58, above and the material adverse action taken by Defendants against him.

73.    Defendants continued to ignore Supervisor GONZALEZ's harassment of Plaintiff HERNANDEZ and, after he ultimately acknowledge the relationship, which Plaintiff HERNANDEZ claimed was nonconsensual, and reported Supervisor GONZALEZ's conduct, Defendants subjected him to adverse treatment.

### CLAIMS FOR RELIEF
### (Harassment based on Sex)

### Harassment in Violation of
### The Florida Civil Rights Act
### of 1992, FLA. STAT. 760 ET SEQ

74.    Plaintiff HERNANDEZ incorporates by reference the allegations in all preceding paragraphs.

75.    Plaintiff HERNANDEZ, a member of a protected class (male), brings this claim on his own behalf and on behalf of all similar situated male employees of MIDO.

76.    On a continuing basis since at least 2012, Defendants were aware that Supervisor GONZALEZ, his direct supervisor, subjected Plaintiff HERNANDEZ to unwelcome conduct related to his sex, male, including sexual advances, requests for favors, or other verbal or physical

conduct of a sexual nature location in violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a).   Specifically, Defendants were aware that Supervisor GONZALEZ subjected Plaintiff HERNANDEZ to unwelcome conduct related to his sex as outlined in paragraphs 1 to 58, above.

77.     The harassment and unlawful employment practices suffered by Plaintiff HERNANDEZ were based on his sex, male.

78.     The effect of the harassment and unlawful employment practices complained of in paragraphs 16 through 27 above was sufficiently severe and pervasive and had the purpose and effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile or offensive work environment.

79.     The effect of the harassment and unlawful employment practices complained of in paragraphs 16 through 27 above has been to deprive Plaintiff HERNANDEZ and similarly situated male employees who worked at United States Equal Employment Opportunity Commission Miami District Office since at least 2012 of equal employment opportunities and otherwise adversely impact their status as employees because of their sex, male.

80.     The unlawful employment practices complained of in 16 through 27 above were intentional and caused Plaintiff HERNANDEZ and similarly situated males who worked at Defendant's Miami District Office to suffer emotional distress, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or personal stress and mental and physical pain and suffering

81.     The unlawful employment practices complained of in 16 through 27 above were intentional and caused Plaintiff HERNANDEZ and similarly situated males who worked at Defendant's Miami District Office to lose earnings, compensation and income including, but not limited to, back-pay.

82.     The unlawful employment practices complained of in 16 through 27 above were engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff HERNANDEZ and similarly situated males employed by Defendants.

83.     The unlawful employment practices complained of in 16 through 27  above form the basis for imputing liability on Defendants as Defendants were aware of the harassment and unlawful employment practices since 2012 and failed to take any prompt and/or reasonable action to end the harassment.

**CLAIMS FOR RELIEF**
**(Retaliation/Retaliatory Harassment)**
**Retaliation in Violation of**
**The Florida Civil Rights Act**
**of 1992, FLA. STAT. 760 ET SEQ**

84.     Plaintiff HERNANDEZ incorporates by reference the allegations in all preceding paragraphs.

85.     Plaintiff HERNANDEZ, at all times material hereto, undertook protected conduct when he complained to Supervisor GONZALEZ and Defendants about the unwanted conduct as outlined in paragraphs 3 to 58, above.

86.     As a result thereof, Defendants took a material adverse action against Plaintiff HERNANDEZ.  Specifically, Defendants retaliated against Plaintiff HERNANDEZ outlined in paragraphs 28 to 58, above.

87.     Acausal nexus exists between Plaintiff HERNANDEZ's undertaking of the protected conducted complained of in paragraphs 28 to 58, above and the material adverse action taken by Defendants against him.

88.     Defendants continued to ignore Supervisor GONZALEZ's harassment of Plaintiff HERNANDEZ and, after he ultimately acknowledge the relationship, which Plaintiff

HERNANDEZ claimed was nonconsensual, and reported Supervisor GONZALEZ's conduct, Defendants subjected him to adverse treatment.

<h3 align="center">PRAYER FOR RELIEF</h3>

Wherefore, the Plaintiff MARIO HERNANDEZ respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from subjecting male employees to unwelcome, sexually graphic and vulgar sexual harassment and retaliation for opposing such harassment;

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for male, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendants to make whole Plaintiff HERNANDEZ and similarly situated males, by providing restitution and compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 1 through 58 above, in amounts to be determined at trial;

D.      Order Defendants to make whole Plaintiff HERNANDEZ and similarly situated male employees, by providing full restitution and compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 1 through 58 above, in amounts to be determined at trial;

E.      Order Defendant full restitution or compensation for loss of personal and sick leave, and for all retirement benefits

F.      Order Defendants to pay Plaintiff HERNANDEZ and similarly situated males punitive damages for its malicious and reckless conduct described in 1 through 58 above, in

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 I Coral Gables, FL 33134 I T: (305) 340-7542 I F: (305) 418-7438 I W: www.azoysocorro.com

amounts to be determined at trial;

G.      Order Defendants to reassign Plaintiff to another first- and second-line supervisor within the Miami District Office's (MIDO) jurisdiction.

H.      Order Defendants to issue Plaintiff's promotion.

I.      Order Defendants to pay Plaintiff HERNANDEZ and similarly situated males for any benefits including, but not limited to, sick leave, annual leave, or leave without pay taken as a result of the alleged discriminatory or retaliatory harassment.

J.      Order Defendants to confirm that Plaintiff HERNANDEZ's leave restriction has been lifted and remove any documentation concerning the leave restriction from Plaintiff's personnel records.

K.      Order the appropriate and necessary posting related to the claims herein.

L.      Order Defendants to restore Plaintiff HERNANDEZ's flexible schedule and telework consistent with Agency policy and provisions of the Collective Bargaining Agreement.

M.      Order Defendants to remove any documentation concerning Plaintiff HERNANDEZ's current PIP or references thereto from Plaintiff's personnel file.

N.      Order Defendants to forward information regarding its veteran's advocacy group (Veteran Employees Serving Together) (VETS) to the Plaintiff HERNANDEZ regarding any further developments as it becomes available.

O.      Order Defendants to consider taking disciplinary action against Supervisor GONZALEZ.  In determining the appropriate disciplinary action, the Agency must consider Supervisor GONZALEZ egregious misconduct and 29 CFR 1604 (EEOC's Zero Tolerance Policy).

P.      Award Plaintiff her costs of this action, including reasonable attorneys' fees under

**AZOY SOCORRO, LLP**

2020 Ponce de Leon Boulevard, Suite 1008 l Coral Gables, FL 33134 l T: (305) 340-7542 l F: (305) 418-7438 l W: www.azoysocorro.com

42 U.S.C.A. § 2000e-5; Fla. Stat. § 760.11 (2004); and 42 U.S.C.A. §§ 12203 and 12205; and pre-judgment interest, and

Q.      Grant such further relief as the Court deems necessary and proper in the public's interest.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

    /s/ José A. Socorro_____
**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675
**RALF AZOY, ESQ.**
Florida Bar No.: 92695
**DAVID M. FRAGUIO, ESQ.**
Florida Bar No.: 1016475
AZOY SOCORRO, LLP
*Attorneys for Plaintiff*
2020 Ponce de Leon Blvd., Suite 1008
Coral Gables, Florida 33134
Tel: (305) 340-7542
Fax: (305) 418-7438
Email: jose@azoysocorro.com;
            ralph@azoysocorro.com
            david@azoysocorro.com